**UNITED STATES of America, Appellee,**

v.

**William H. CARVELL, Defendant, Appellant.**

No. 95–1606.

United States Court of Appeals, First Circuit.

Heard Oct. 6, 1995.

Decided Jan. 19, 1996.

James R. Bushell, for appellant.

Helene Kazanjian, Assistant United States Attorney, with whom Jay P. McCloskey, United States Attorney, and George T. Dilworth, Assistant United States Attorney, were on brief, for the United States.

Before TORRUELLA, Chief Judge, STAHL and LYNCH, Circuit Judges.

LYNCH, Circuit Judge.

William Carvell, a fifty year old Maine farmer, was sentenced to prison for seventy months on marijuana charges. The question on appeal is whether the Sentencing Guidelines prohibited the trial judge from exercising discretion to depart downward in the sentence given. Carvell pled guilty to growing marijuana, saying it was for his own use to combat his depression and suicidal tendencies. The trial judge concluded that, as a matter of law, the Guidelines' "drug dependency" prohibition overrode any downward departure under the "lesser harms" provision. The judge also noted that, but for the "drug dependency" departure prohibition, he would have reduced the sentence through a downward departure. We hold that the court did have authority to consider a downward departure under the "lesser harms" provision and return the case for resentencing.

Carvell also raises for the first time on appeal the argument that the marijuana manufacturing statute, as applied to him, is invalid in the aftermath of *United States v. Lopez*, —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). We decline to go down that path.

Having never lived anywhere but his family farm (save during his nine month marriage), and eking out a subsistence living, Carvell grew crops and produced some marijuana· on his six acre family farm in Lyman, Maine. Carvell lived there with his mother and with his father, for whom he had cared as the father's death came. Carvell's formal education stopped with high school; and his only pre-arrest work experience, other than on the farm, was a brief stint at the Portsmouth Naval Shipyard.

Law enforcement officials, acting on an informant's tip and an aerial overview of the farm, raided the farm and found 467 marijuana plants, an Excedrin bottle containing marijuana seeds, some growing supplies and smoking paraphernalia and some more marijuana in the barn. Because the Sentencing Guidelines count each plant as equivalent to 1 kilogram, the plants, together with the other marijuana, amounted to 468 kilograms of marijuana attributable to Carvell.[1] U.S.S.G. § 2D1.1(c) (Nov. 1994).

Carvell was arrested on Halloween in 1994 and indicted on one count of knowingly "manufacturing" marijuana. 21 U.S.C. §§ 841(a)(1) & (b)(1)(B). Carvell cooperated with the police, the Maine Drug Enforcement Agency, and the U.S. Attorney, and pled guilty.

During the time after his preliminary hearing and before his plea, Carvell was released from custody on the condition that he not use marijuana. Consequently, Carvell became depressed and suicidal and was admitted to the Maine Medical Center. He was kept for

---

1. In fact the plants weighed 67 pounds or 30 kilograms, but the Guidelines require that each plant be counted as one kilogram when the offense involves more than fifty plants. U.S.S.G. § 2D1.1(c). This is because "Congress intended to punish growers of marihuana by the scale or potential of their operation and not just by the weight [or size] of the plants seized at a given moment." *United States v. McMahon*, 935 F.2d 397, 401 (1st Cir.) (citation and quotation marks omitted; alteration in original), *cert. denied*, 502 U.S. 897, 112 S.Ct. 272, 116 L.Ed.2d 224 (1991). The district court here took judicial notice that in fact plants may not produce one kilogram each.

two weeks, received medications and therapy and was released to jail.

At his sentencing hearing, Carvell testified that he suffered from severe depression since the mid 1960's and that his illness made him feel suicidal. He sought medical help in 1968, was diagnosed as suffering from chronic depression and was prescribed medication. Carvell also testified that he became ill from the medication and that his physician recommended that he use marijuana to treat his depression. He tried it, found that it helped and so he kept on. In 1970 Carvell was arrested for selling three fourths of a pound of marijuana and was remanded to the state prison in Thomaston, Maine for nine months. During his incarceration he was told by the prison psychiatrist that marijuana relieved depression. In 1988, he was arrested for cultivating marijuana and sentenced to five years in prison. Carvell continued to use marijuana in violation of the terms of his probation under the 1988 sentence. As for the marijuana he grew in 1994, he said it was to insure he had an adequate supply to get him through the year. Carvell admitted that he intermittently sold some marijuana to friends without making a profit, saying it was mostly to the same person, also suffering from depression. The government did not contest Carvell's claim of psychiatric illness.

Carvell, under new medication from the Maine Medical Center, addressed the district court, saying:

> [T]he only reason I used marijuana was to keep from being suicidal, and that now that I have found a proper medication that really works ... I don't believe that I would ever be tempted ... in breaking the law to treat my depression.

The district court found Carvell credible, that Carvell had a history of major depression, that he had been advised by at least one doctor that marijuana was an effective treatment, that Carvell had not previously found an alternative medication and that Carvell was sincere both in stating that he used marijuana to prevent himself from attempting suicide and in believing he no longer needed marijuana.

The district court concluded:

Were 5H1.4 not so clear, I would grant a departure under 5K2.11, the lesser harms policy statement.... I am absolutely convinced, in light of the testimony I've heard, that Mr. Carvell sincerely believed that he had a severe medical problem that would lead him to seriously consider suicide, and that to avoid that situation he committed the crime of providing for himself marijuana. The policy statement [section 5K2.11] goes on to say, "In such instances a reduced sentence may be appropriate, provided that the circumstances significantly diminish society's interest in punishing the conduct." I would find that to be the case here.... [F]or all of those reasons, I would depart downward under the lesser harms provision and I would depart downward to the mandatory minimum of 60 months in this case. But I do not do so, because I believe [as the government has argued], that 5H1.4 precludes that kind of analysis [paragraph structure omitted].

The government also said it believed the Guidelines gave it no flexibility as to its recommendation.

*Guidelines Analysis*

The question presented is a legal one of whether Guidelines section 5H1.4, concerning "Physical Condition, Including Drug ... Dependence or Abuse" prohibits a trial judge on these facts from considering a downward departure under Guidelines section 5K2.11, the "lesser harms" provision. We give substantial deference to the district court's findings that the factual predicates for the application of both section 5H1.4 and section 5K2.11 are present.

■ Review of the sentencing court's fact findings is for clear error and we "will not disturb supported findings unless our scrutiny of the record convinces us that a serious mistake was made." *United States v. Sklar*, 920 F.2d 107, 110–11 (1st Cir.1990) (citations omitted). The sentencing court found that: (i) Carvell had a psychological problem that precipitated his dependence; (ii) Carvell believed he needed to use marijuana in order to prevent himself from committing suicide; (iii) he had tried legally prescribed drugs, but they had failed, and he had turned to mari-

juana; (iv) at least one doctor had advised Carvell to use marijuana to alleviate his problem; and (v) Carvell would not use marijuana again because he had found legally available drugs that worked to solve his problem. The district court found that Carvell believed that using marijuana was the only way he could keep from committing suicide and that, as a factual matter, Carvell would qualify for a downward departure under the lesser harms provision of the Guidelines. These fact determinations are for the sentencing court. *See United States v. Rivera*, 994 F.2d 942, 950 (1st Cir.1993). The record contains no basis for disturbing the district court's fact findings here.

■ We review *de novo* the legal question of whether section 5H1.4 precludes any downward departure under section 5K2.11. *See United States v. Schultz*, 970 F.2d 960, 962 (1st Cir.1992) ("The legal determination as to the proper interplay among related guidelines is subject to plenary review."), *cert. denied*, 506 U.S. 1069, 113 S.Ct. 1020, 122 L.Ed.2d 167 (1993). The government urged and the sentencing judge felt that he was barred from granting Carvell a downward departure under section 5K2.11,[2] the "lesser harms" provision, because section 5H1.4[3] prohibits downward departures for drug "dependence" or "abuse." Section 5H1.4 provides that drug "dependence or abuse is not a reason for imposing a sentence below the Guidelines," U.S.S.G. § 5H1.4, p.s. (emphasis added), while section 5K2.11 allows a departure in sentencing where a defendant "commit[s] a crime to avoid a per-

ceived greater harm," U.S.S.G. § 5K2.11, p.s., in this case, the taking of his own life.

■ We hold that a district court has authority to consider a downward departure under section 5K2.11, *provided there is an appropriate factual predicate*, even if that predicate subsumes particular facts that would be precluded by section 5H1.4 from forming a basis for departure. To hold otherwise would be inconsistent with the intent of the Commission as expressed in the relationship between Part H and Part K, in section 5K2.11 itself, and in the relationship among other sections of the Guidelines. It would also be inconsistent with the method of analysis adopted by this Circuit in *United States v. Sklar*, 920 F.2d 107 (1st Cir.1990).

The structure of the Guidelines illuminates that there is no necessary conflict between the two sections. *Cf. United Savings Ass'n v. Timbers of Inwood Forest*, 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988) (individual statutory provisions should be interpreted in light of their relationship to other provisions). The "drug dependence" downward departure bar appears in Chapter 5, Part H of the Guidelines, which sets forth "specific offender characteristics" that "are not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range." U.S.S.G. Ch. 5, Pt. H, intro. comment. Having identified certain types of characteristics in Chapter 5, Part H as "not ordinarily relevant" to departures, the Commission then went on in Part K of Chapter 5 to specify permissible grounds for departures. U.S.S.G. Ch. 5, Pt. K. Part K first provides a general statement

---

2. Section 5K2.11 provides in pertinent part:

*Lesser Harms* (Policy Statement)
Sometimes, a defendant may commit a crime in order to avoid a perceived greater harm. In such instances, a reduced sentence may be appropriate, provided that the circumstances significantly diminish society's interest in punishing the conduct, for example, in the case of a mercy killing. Where the interest in punishment or deterrence is not reduced, a reduction in sentence is not warranted. . . .
In other instances, conduct may not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue. For example, where a war veteran possessed a machine gun or grenade as a trophy, or a school teacher possessed a controlled sub-

stance for display in a drug education program, a reduced sentence might be warranted.
U.S.S.G. § 5K2.11, p.s. (Nov. 1994).

3. Section 5H1.4 provides in relevant part:

*Physical Condition, Including Drug or Alcohol Dependence or Abuse* (Policy Statement)
. . . Drug or alcohol dependence or abuse is not a reason for imposing a sentence below the guidelines. Substance abuse is highly correlated to an increased propensity to commit crime. Due to this increased risk, it is highly recommended that a defendant who is incarcerated also be sentenced to supervised release with a requirement that the defendant participate in an appropriate substance abuse program. . . .
U.S.S.G. § 5H1.4, p.s. (Nov. 1994).

concerning departures in cases involving factors not adequately considered by the Commission. U.S.S.G. § 5K2.0, p.s. Part K then lists specific grounds that may warrant departure, including the "lesser harms" provision.

In light of this structure, the fact that a factor described in Chapter 5, Part H as a discouraged or forbidden ground for departure is present in a case does not itself necessarily negate departure based on a permissible ground carefully detailed by the Commission in Part K. Part K complements Congress' goal that the Guidelines not be imposed "in a mechanistic fashion." S.Rep. No. 225, 98th Cong., 2d Sess. 4 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3234 ("The sentencing guidelines system will not remove all of the judge's sentencing discretion. Instead, it will guide the judge in making his decision on the appropriate sentence."). Congress intended "the sentencing judge [to act on her] obligation to consider all the relevant factors in a case and to impose a sentence outside the guidelines in an appropriate case." 1984 U.S.C.C.A.N. at 3235.

■ The limitation contained within the text of the "lesser harms" provision, section 5K2.11, sheds light on its scope in relation to section 5H1.4. Section 5K2.11 provides that "[w]here the interest in punishment or deterrence is not reduced, a reduction in sentence is not warranted." U.S.S.G. § 5K2.11, p.s. Here, where the record clearly demonstrates that the alternative to Carvell's marijuana use might well have been the taking of his own life, the interest in punishment or deterrence of drug "manufacturing" could reasonably be thought to be reduced. In contrast, in the ordinary drug dependence case, it is difficult to see how that limitation in section 5K2.11 could be avoided. The Commission has specified that society's interest in punishment and deterrence outweighs the "drugs made me do it" excuse for crimes committed to feed drug habits or while under the influence of drugs. U.S.S.G. § 5H1.4, p.s. Moreover, claims of being driven to drugs by the habituation of prior drug use, disadvantaged upbringing or poor socioeconomic life conditions have been weighed by the Commission and found insufficient ordinarily to overcome the societal interest in deterrence and punishment.[4] U.S.S.G. §§ 5H1.4, p.s., 5H1.10, p.s. & 5H1.12, p.s.

This is not a case where the defendant's drug dependence is the very element driving the applicability of the "lesser harms" provision. The risk of suicide for Carvell was not a byproduct of his drug dependence: the district court credited Carvell's testimony that fear he would take his own life led him to use drugs, not vice versa. The avoidance of suicide, not drug use, drives the "lesser harms" analysis here.

Nor is there reason to think that a downward departure here would be inconsistent with U.S.S.G. § 5H1.3, p.s., which discourages consideration of "mental and emotional conditions" as grounds for departure. Section 5H1.3 explicitly permits consideration of "mental and emotional conditions" when they are provided for in Chapter 5, Part K, Subpart 2. U.S.S.G. § 5H1.3, p.s. That is exactly where section 5K2.11 is located.[5] Indeed, the Commission chose to leave the limitation in section 5K2.11 to cases where

---

**4.** Further, as Judge Selya's important and seminal article on the Sentencing Guidelines notes, departures based solely on drug dependence could "confer a benefit on addicted defendants that is unavailable to similarly situated drug-free defendants (and thus would create a perverse incentive to develop such a problem)." Bruce M. Selya & Matthew Kipp, *An Examination of Emerging Departure Jurisprudence under the Federal Sentencing Guidelines,* 67 Notre Dame L.Rev. 1, 35 (1991) (footnote omitted). No such incentive would be created by a downward departure here under section 5K2.11.

**5.** *See United States v. Hines,* 26 F.3d 1469, 1478 n. 6 (9th Cir.1994) (mental and emotional conditions relevant in determination that upward departure is warranted to the extent permitted in section 5K2.0); *United States v. Russell,* 917 F.2d 512, 517 (11th Cir.1990) (mental and emotional conditions relevant in determination of downward departure to the extent provided in section 5K2.12 (coercion or duress) and 5K2.13 (diminished capacity)), *cert. denied,* 499 U.S. 953, 111 S.Ct. 1427, 113 L.Ed.2d 479 (1991); *United States v. Saldana,* Crim. No. 88–00196, 1989 WL 61140, *2 (M.D.Pa. May 19, 1989) (downward departure allowed under the "lesser harms" provision where defendant's mental and emotional condition resulted in his perception that the commission of crime was warranted to avoid a greater harm).

the interest in deterrence or punishment was not reduced. *See* U.S.S.G. § 5K2.11.

Our conclusion that the "drug dependence" departure bar does not preclude a "lesser harms" departure here is consistent with the law of this Circuit concerning whether a defendant's post-arrest rehabilitation from drug use can be considered as a sentencing factor. In *United States v. Sklar*, 920 F.2d 107 (1st Cir.1990), this Court said that a defendant's drug rehabilitation could be taken into account at least as a factor in deciding whether departure is warranted and that, if "significantly unusual," a defendant's post-arrest rehabilitation might itself provide a ground for downward departure.[6] This was so although drug "dependence or abuse" necessarily precedes rehabilitation, like sin precedes salvation.[7] *See id.* at 115–16 & n. 9. There is even less reason to believe that section 5H1.4 bars departure here, where the defendant's perception that he was avoiding a greater harm, unlike a defendant's drug rehabilitation, is expressly permitted by the Guidelines as a ground for downward departure.[8] *Cf. United States v. Hines*, 26 F.3d 1469, 1478 (9th Cir.1994) (district court had authority to consider upward departure from Guidelines criminal history category based on defendant's dangerous mental condition as provided in U.S.S.G. § 4A1.3, even though mental condition is ordinarily discouraged as a ground for departure by section 5H1.3).

Concluding that the "drug dependence" provision does not here bar a downward departure where the "lesser harms" provision simultaneously provides a permissible ground for such a departure, we reach and reject the

government's argument that there is yet another bar. The government argues that marijuana's classification as a Schedule I substance under the Controlled Substances Act, *see* 21 U.S.C. § 812, evidences a legislative determination that marijuana "has no currently accepted medical use in treatment," *id.* at § 812(b)(1)(B), and thus precludes a downward departure on the facts here. That conclusion does not follow.

There is no inconsistency between Carvell's downward departure claim and the classification of marijuana as a Schedule I substance. Deciding whether a downward departure is warranted under section 5K2.11 in this case does *not* require an examination of whether marijuana has a "currently accepted medical use," 21 U.S.C. § 812(b)(1)(B),[9] or satisfies the other factual criteria for being listed on Schedule I. Nor does the section 5K2.11 inquiry even depend upon a determination of whether the medical benefits of Carvell's marijuana use in his particular case outweighed the risks. Rather, the sole dispositive question under section 5K2.11 is whether—taking as *given* that marijuana is a Schedule I substance and has no "currently accepted medical use for treatment"—the defendant here committed the offense conduct "in order to avoid a perceived greater harm," thus falling under section 5K2.11. We hold that the district court had discretion to consider a downward departure under section 5K2.11.

*Carvell's Commerce Clause Attack on 21 U.S.C. § 841(a)(1)*

Carvell argues that there was no crime, as the district court lacked subject matter juris-

---

6. *Sklar* held that, ordinarily, post-arrest rehabilitation is not a grounds for departure because such rehabilitation can adequately be taken into account through the granting of acceptance-of-responsibility credit under U.S.S.G. § 3E1.1. *See Sklar*, 920 F.2d at 115–16.

7. *See also United States v. Harrington*, 947 F.2d 956, 962 (D.C.Cir.1991) (en banc). In his dissent, Judge Silberman took the contrary position that rehabilitation cannot be taken into account either under section 3E1.1 or in considering departure from the Guidelines sentence, arguing that "the Commission rejected drug dependence—and therefore rehabilitation—as a sentencing factor under section 5H1.4." *Id.* at 970 (Silberman, J., dissenting).

8. Similarly, in section 5K2.12, the Commission has explicitly allowed departures where coercion or duress is shown. The fact that age or gender might be a factor in such coercion has not barred such departures, although each is itself prohibited as a ground for departure under U.S.S.G. §§ 5H1.1, p.s. & 5H1.10, p.s. *See United States v. Johnson*, 956 F.2d 894, 898 (9th Cir.1992); *United States v. Whitetail*, 956 F.2d 857, 862 (8th Cir.1992); *United States v. Gaviria*, 804 F.Supp. 476, 479–80 (E.D.N.Y.1992); *United States v. Naylor*, 735 F.Supp. 928, 929 (D.Minn.1990).

9. *See also* 57 Fed.Reg. 10,499, 10,506 (Mar. 26, 1992) (final order of Administrator of DEA, setting forth specific criteria for finding "currently accepted medical use").

diction in that 21 U.S.C. § 841(a)(1), as applied to him, exceeded Congress' power under the Commerce Clause. He raises the argument for the first time on appeal, positing that the argument is nonetheless timely because his guilty plea was entered before the decision in *United States v. Lopez,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).

■ More than ever, we have reason to adhere to the normal rule that issues not raised below will not be heard on appeal unless there was plain error. *United States v. Olano,* 507 U.S. 725, 732–33, 113 S.Ct. 1770, 1776–77, 123 L.Ed.2d 508 (1993); *United States v. Luciano–Mosquera,* 63 F.3d 1142, 1156 (1995). This is not a change-in-the-law situation which might incline us to a more sympathetic view of the failure of counsel to be prescient enough to raise an issue in the trial court when the law was firmly against defendant at the time. *Cf. United States v. London,* 66 F.3d 1227, 1239–40 (1st Cir.1995) (waiver was excusable where instructions, when given, were in accordance with newly minted en banc decision of the First Circuit); *United States v. Collins,* 60 F.3d 4, 7 (1st Cir.1995). *Lopez* was argued to the Supreme Court on November 8, 1994, and the challenges made there were no secret. Carvell was arrested on October 31, 1994, his plea was on January 23, 1995, and he was sentenced on June 1, 1995. *Lopez* was decided on April 26, 1995, well before Carvell's sentencing, giving him ample time to move to withdraw his plea based on *Lopez.*

■ Not only does Carvell's claim not fit within the category of exceptional cases where review of waived issues will be permitted, *United States v. Krynicki,* 689 F.2d 289, 291–92 (1st Cir.1982), but there is every reason not to undertake to resolve a matter as serious as a challenge to the constitutionality of a criminal statute without adequate notice to the government and without the benefit of a fully developed factual record (to the extent necessary), the sharpening of the issues at trial, and the district court's reasoning. We decline the invitation to so engage.[10] The district court's "failure" to consider sua sponte whether there were Commerce Clause restrictions to defendant's prosecution was not clearly in error, and did not produce a gross miscarriage of justice or seriously affect the fairness, integrity or public reputation of the judicial proceedings. *Olano,* 507 U.S. at 736, 113 S.Ct. at 1779.

*Conclusion*

The sentencing court determined that it would grant Carvell a downward departure of ten months under section 5K2.11, the "lesser harms" provision, to the mandatory minimum sentence of sixty months, were such a departure not barred by section 5H1.4. Having concluded that section 5H1.4 does not bar the departure in this case, we *vacate the sentence and remand for resentencing with the instruction that Carvell be sentenced to the mandatory minimum of sixty months.*

---

**10.** Carvell's argument faces the additional barrier that it is made in the context of a valid guilty plea. A guilty plea and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain the judgment and sentence, and any subsequent attack on the conviction is normally limited to inquiry as to the validity of the plea and plea hearing. *See United States v. Broce,* 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989); *United States v. Martinez–Martinez,* 69 F.3d 1215, 1224 (1st Cir.1995); *Valencia v. United States,* 923 F.2d 917, 920 (1st Cir.1991). However, since Carvell has not preserved his Commerce Clause challenge for appeal, we need not decide whether this doctrine also bars his claim, or whether any of the narrow exceptions that exist where it is evident that "on the face of the record the court had no power to enter the conviction or impose the sentence," *Broce,* 488 U.S. at 569, 109 S.Ct. at 762, are available here.