USCA1 Opinion

 

 July 12, 1996 [NOT FOR PUBLICATION]  United States Court of Appeals For the First Circuit ____________________ No. 95-1616 UNITED STATES OF AMERICA, Appellee, v. JACINTO ORLANDO MORALES, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Francis J. Boyle, Senior U.S. District Judge] __________________________ ____________________ Before Torruella, Chief Judge, ___________ Stahl and Lynch, Circuit Judges. ______________ ____________________ George J. West for appellant. ______________ Margaret E. Curran, Assistant United States Attorney, with whom ___________________ Zechariah Chafee, Assistant United States Attorney and Sheldon _________________ _______ Whitehouse, United States Attorney, were on brief for the United __________ States. ____________________ ____________________ LYNCH, Circuit Judge. Jacinto Orlando Morales, who LYNCH, Circuit Judge. _____________ at age forty-eight began his drug-related criminal career, was tried and convicted, at age fifty-six, of possession with intent to distribute both cocaine base and cocaine and of being a felon in possession of a firearm. He appeals from his convictions, arguing that they should be reversed due to ineffective assistance of counsel, that the district court erred in its instructions to the jury and in admitting certain evidence, that the evidence was insufficient to convict, that the prosecutor impermissibly vouched for the government's witnesses and that the statutes under which he was convicted are unconstitutional as exceeding Congress' lawful power under the Commerce Clause. In addition, he appeals from his sentence, which will keep him in prison past age seventy-one, on the grounds that the district court should have departed downward in light of his age and the small amounts of cocaine he says were involved. We affirm. I Background __________ Local police work led to this federal conviction. Two experienced members of the Providence, Rhode Island, Police Department investigated stories of drug trafficking by Morales. They obtained a search warrant for his apartment in a three-decker tenement and drove to the residence. They saw Morales leaving his building. They stopped him, told him of the warrant, informed him of his rights, and asked him to return to the apartment with them. Morales did so and let -3- 3 the two detectives into his small apartment. The detectives found two bags, containing a total of over twenty-eight grams of cocaine, hidden in a pocket hollowed out of the insulation in the refrigerator door. They also found twenty-three vials of crack cocaine (cocaine base), alongside drug paraphernalia, in cabinets above the kitchen sink. Hidden between pairs of shoes on a curtained shelf in the bedroom they found a fully operable and loaded Raven .25 caliber semi-automatic handgun. The defense theory was that the police planted the evidence. The theory relied on the testimony of a defense witness who lived in Morales' building, and on inconsistencies in the detectives' testimony about the order in which the evidence was discovered and about the handling of the evidence. The jury convicted Morales on three of four counts: possession with intent to distribute cocaine (count one) and possession with intent to distribute cocaine base (count two), both in violation of 21 U.S.C. 841(a)(1); and possession of a firearm by a convicted felon (count three), in violation of 18 U.S.C. 922(g)(1). Morales was acquitted on the fourth count: use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C.  924(c)(1). At sentencing, Morales' counsel appropriately conceded that Morales qualified as a career offender for -4- 4 purposes of U.S.S.G. 4B1.1, but argued that the court should ignore that status in light of the relatively small quantities of drugs involved. Morales requested that the court depart downward for two reasons. He asserted that the career offender enhancement overstated his criminal history. He also said the government's recommended sentence would effectively constitute a life sentence given his age. The court found there was, on the facts of this case, no basis to veer from the career offender guideline and refused to grant a downward departure. The court sentenced Morales to 210 months imprisonment consecutive to the state sentences Morales was then serving, with other conditions not pertinent here. II Convictions ___________ Morales' attacks on his convictions tread on familiar ground and do not warrant extensive discussion. Ineffective Assistance of Counsel _________________________________ Morales did not present his ineffective assistance claim to the district court. "With a regularity bordering on the monotonous," this court has held "that fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions, but, rather, must originally be presented to, and acted upon by, the trial -5- 5 court." United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. _____________ ____ 1993), cert. denied, 114 S. Ct. 1839 (1994). _____ ______ This case does not fall within the exception to the rule. Only "where the critical facts are not genuinely in dispute and the record is sufficiently developed to allow reasoned consideration" will this court entertain an ineffective assistance claim raised initially on direct review. United States v. Natanel, 938 F.2d 302, 309 (1st ______________ _______ Cir. 1991), cert. denied, 502 U.S. 1079 (1992). The alleged _____ ______ ineffective assistance of counsel arose, Morales argues, from the failure of his trial counsel to file a motion to suppress the evidence resulting from the search of his apartment undertaken pursuant to a facially valid warrant. By its nature, this claim will require the presentation of evidence that it would have had some actual basis in fact, as well as proof of prejudice. See Kimmelman v. Morrison, 477 U.S. 365, ___ _________ ________ 375 (1986). Thus, Morales' ineffective assistance claim is unsuited for consideration initially on this appeal. Limiting Instruction ____________________ Morales argues that the trial court erred in not sua sponte giving the jury a limiting instruction directing ___ ______ it to consider the parties' stipulation that Morales was a felon only for purposes of establishing a required element in ____ the felon-in-possession of a firearm charge. But the defendant cannot have his cake and eat it too. As a result -6- 6 of the stipulation, the government could not put in evidence of the number and nature of Morales' prior felony convictions, thereby protecting Morales against undue prejudice from such evidence. The stipulation was proper and in accord with our decision in United States v. Tavares, 21 _____________ _______ F.3d 1, 4-5 (1st Cir. 1994) (en banc), where we noted that in most, but not all cases, such evidence has little relevance to the felon-in-possession charge and usually presents a risk of unfair prejudice. Morales now asks for a blanket rule that a trial court must sua sponte give the type of limiting instruction ___ ______ he urges in this appeal, a position he is forced into by his failure to ask for such an instruction at trial. That failure is fatal. See United States v. De La Cruz, 902 F.2d ___ _____________ __________ 121, 124 (1st Cir. 1990) (holding that as a general rule the failure of the trial court to give a cautionary instruction sua sponte is not reversible error). Even so, the cure he ___ ______ seeks may be worse than the hypothesized disease. Whether to seek a limiting instruction is a strategic choice by trial counsel. "Whether an instruction will 'cure' a problem or exacerbate it by calling more attention to it than warranted is within the ken of counsel and part of litigation strategy and judgment. The obligation to suggest [an instruction], if any, rested on defense counsel." United States v. Cartagena- _____________ __________ Carrasquillo, 70 F.3d 706, 713 (1st Cir. 1995). Despite ____________ -7- 7 Morales' argument in this case, defendants in other cases might well think that the limiting instruction sought by Morales here would unnecessarily highlight their status as felons. Morales' post-conviction assertion of error in this case is no warrant for constraining the strategic choices of counsel in other cases. There was no error. Vials of Crack Cocaine ______________________ Morales says the district court erred in admitting into evidence twenty-three vials of crack cocaine. He says they were inadmissible because the transmittal sheet that accompanied the vials to the laboratory for testing stated there were twenty vials, and because the chemist tested a sample, only two, and not all twenty-three of the vials. On the first argument, chain-of-custody attacks usually go to the weight of the evidence and not to admissibility; our review is for abuse of discretion. See ___ Cartagena-Carrasquillo, 70 F.3d at 715. The government ______________________ explained that the "20" on the transmittal sheet was a typographical error and produced testimony that in fact twenty-three vials were seized from Morales' apartment, kept in custody, sent to the lab, and that that lab received twenty-three vials. There was no abuse of discretion in admitting the vials. On the second point, Morales' argument assumes that the government had to show that all twenty-three vials -8- 8 contained crack. To convict Morales, however, the jury need only have found that defendant possessed some amount of a controlled substance. See 21 U.S.C. 841; United States v. ___ _____________ Barnes, 890 F.2d 545, 551-52 & n.6 (1st Cir. 1989), 494 U.S. ______ 1019 (1990). While undoubtedly relevant to the sentencing, the precise quantity and nature of the substance, be it cocaine or cocaine base, was not an element of the crime for the jury to decide. That twenty-three vials were admitted but only two vials were tested thus could not have amounted to reversible error. Firearm _______ Morales challenges the admission of the handgun on authentication grounds, pointing to inconsistencies in the testimony of the two detectives as to the order of the discovery of the evidence and the absence of an evidence tag on the handgun. Our review on this evidentiary question is for abuse of discretion. See United States v. Abreu, 952 ___ _____________ _____ F.2d 1458, 1467 (1st Cir.), cert. denied, 503 U.S. 994 _____ ______ (1992). The trial judge admitted the gun into evidence after hearing testimony that it was the same gun the detectives discovered, the gun had the same serial number, and it was in the same condition as when discovered. The serial number evidence alone arguably provided sufficient authentication in light of the legal requirement imposed on gun manufacturers to place an indelible, non-duplicating individual serial -9- 9 number on all firearms. See 27 C.F.R. 179.102; see also 26 ___ ___ ____ U.S.C. 5842(a). There was no abuse of discretion. Sufficiency of the Evidence ___________________________ In reviewing the sufficiency of the evidence, we look at the evidence and reasonable inferences from the evidence in the light most favorable to the prosecution to determine if it would allow a rational jury to find guilt beyond a reasonable doubt. See United States v. Luciano- ___ _____________ ________ Mosquera, 63 F.3d 1142, 1149 (1st Cir. 1995), petition for ________ ________ ___ cert. filed, 64 U.S.L.W. 3765 (U.S. Apr. 26, 1996) (No. 95- _____ _____ 1775). Here, there was no dispute that Morales lived in the apartment and was its sole occupant. That is where the drugs were found, some of which were hidden, with some effort, in a refrigerator door. The gun was also hidden, out of plain view. The jury could reasonably infer that Morales was in knowing possession of both the gun and the drugs, and need not have believed the somewhat incoherent testimony of the building occupant proffered by the defense. See United ___ ______ States v. Calderon, 77 F.3d 6, 10 (1st Cir. 1996) ______ ________ ("Credibility determinations are uniquely within the jury's province, and we defer to the jury's verdict if the evidence can support varying inferences." (quotation marks and citation omitted)). Prosecutor's Closing ____________________ -10- 10 Morales argues that the prosecution, in its closing rebuttal, improperly vouched for the credibility of its police witnesses. In particular, Morales points to the prosecutor's final argument: They're not, I submit to you, members of the jury, they're not going to run the risk of perjuring themselves and jeopardizing their careers over this. They're doing what they do. They do it day in and day out. They go out with these search warrants and make arrests and you make the decision. This is what they found. I submit to you they're credible officers who testified credibly about the one day in their lives that they were working as police officers and they told you what they found. I'm going to ask you to find the Defendant guilty. Thank you. As Morales made no contemporaneous objection to these statements, review is for plain error. See United States v. ___ _____________ Cruz-Kuilan, 75 F.3d 59, 62 (1st Cir. 1996). ___________ Morales' theory of the case was that the police planted the firearm and illegal drugs in his apartment and subsequently lied at trial in testifying that they belonged to Morales. The credibility of the police was at issue. "Improper vouching occurs where the prosecution places the `prestige of the government behind a witness by making personal assurances about the witness' credibility.'" Id. ___ (quoting United States v. Neal, 36 F.3d 1190, 1207 (1st Cir. _____________ ____ 1994)). The prosecution, in responding to the defendant's theory by pointing out that the police officers had little -11- 11 incentive to lie, was arguably not "making personal assurances." Cf. id. (prosecution's argument that its ___ ___ witnesses were speaking the truth because they had reason to do so, made in response to an attack on the witnesses' credibility, was not improper vouching). Nevertheless, as the government appropriately conceded at oral argument, there were statements in the prosecution's closing, such as "[h]e testified truthfully," of a type that this court has disapproved in the past as improper vouching.1 See United ___ ______ States v. Wihbey, 75 F.3d 761, 771-73 (1st Cir. 1996); see ______ ______ ___ also United States v. Sullivan, __ F.3d __, __, Nos. 95-1719, ____ _____________ ________ 95-1760, slip op. at 18 (1st Cir. 1996) (there can be a fine line between proper arguments in response to credibility attacks on government witnesses and improper vouching). In this case, however, the prosecutor's comments "did not impact the fairness, integrity or public reputation of the proceedings and so should not be noticed as plain error." Sullivan, __ F.3d at __, slip op. at 19. Therefore, ________ even assuming that the prosecutor's comments were improper, there was no reversible error. Cf. Wihbey, 75 F.3d at 771- ___ ______ 72.  Constitutionality of the Statutes _________________________________  ____________________ 1. The United States represented at oral argument that prosecutors in that office were undergoing "training" to ensure that such statements were not made in the future. -12- 12 Morales challenges both the felon-in-possession statute, 18 U.S.C. 922(g)(1), and the drug trafficking statute, 21 U.S.C. 841(a)(1), as being unconstitutional in light of the analysis employed in United States v. Lopez, 115 _____________ _____ S. Ct. 1624 (1995).  The challenge to the constitutional validity of the felon-in-possession statute, 18 U.S.C. 922(g)(1), is foreclosed by United States v. Abernathy, __ F.3d __, __, No. _____________ _________ 95-1720, slip op. at 5-6 (1st Cir. 1996) and United States v. _____________ Bennett, 75 F.3d 40, 49 (1st Cir. 1996). _______ We decline to entertain the challenge to the drug statute, 21 U.S.C. 841(a)(1), which is made in summary fashion, is wholly lacking in developed argumentation focusing on that particular statute, and is raised for the first time on appeal. See Argencourt v. United States, 78 ___ __________ _____________ F.3d 14, 16 n.1 (1st Cir. 1996) (arguments mentioned, but not developed, are deemed waived); cf. United States v. Carvell, ___ _____________ _______ 74 F.3d 8, 14 (1st Cir. 1996). There was no plain error. United States v. Olano, 507 U.S. 725, 736 (1993). _____________ _____ III Sentence ________ Morales argues that the district court erroneously ruled that it was powerless to depart downward from the applicable career offender range. To the extent the district court's decision rested on its belief that it lacked the -13- 13 power to depart, we have jurisdiction over the appeal. See ___ United States v. Lombard, 72 F.3d 170, 184 (1st Cir. 1995). _____________ _______ However, we lack jurisdiction if the district court was aware of its authority to depart, but declined to exercise its discretion to do so. See United States v. Morrison, 46 F.3d ___ _____________ ________ 127, 130 (1st Cir. 1995). To determine whether the court misapprehended its authority to depart or exercised its discretion not to depart, we look to the sentencing judge's remarks within the context of the record. See id. at 130-31. ___ ___ The record reveals that the district court was aware of its power to grant Morales a downward departure, but did not think departure was warranted in the factual circumstances of this case. At sentencing, Morales argued for a downward departure on a number of grounds. Primarily, he argued that because his prior drug convictions were minor, his case was similar to that of United States v. Reyes, 8 F.3d 1379 (9th _____________ _____ Cir. 1993). In Reyes, as a result of applying the career _____ offender provision, U.S.S.G. 4B1.1, to a defendant's prior minor drug trafficking offenses, the applicable sentencing range was increased from a 33-41 month range to a 210-262 month range. Id. at 1381-82. The district court there ___ decided that although the career offender guideline applied, it was going to depart downward to a sentence within the 33- 41 month range. See id. at 1383. The basis for the ___ ___ -14- 14 departure was that the Guidelines' treatment of the defendant's previous criminal history overrepresented its true seriousness. See U.S.S.G. 4A1.3, 5K2.0; Reyes, 8 F.3d ___ _____ at 1383-84. The sentencing transcript here shows that the district court carefully considered Morales' argument based on Reyes. In fact, the court recessed specifically to review _____ Reyes and the other cases cited by Morales. After the _____ recess, the court explained that it did not consider Morales' previous drug convictions minor, that Morales' criminal history suggested a "lack of regard for the law or the people . . . being poisoned by this stuff," and that the enhancement required by the career offender guideline (from a range of 110-137 months to 210-262 months) did not create a disproportionate result. The court concluded that it did not think that the defendant's Guidelines sentencing range was "subject to departure in these circumstances, and . . . that ______________________ there[] [was] no basis for departure under the facts of this _______________________ case." (emphasis added). The district court clearly ____ recognized its authority to depart, but did not think that the facts or circumstances of this case merited such a -15- 15 departure.2 Therefore, we lack jurisdiction to consider Morales' sentencing appeal. Morales argues in passing that the district court erroneously thought that it could never grant a departure based on age. Morales misunderstands the district court. In response to Morales' argument at sentencing that he should be granted leniency because he was sixty at the time of sentencing and would be seventy-one when released, the district court explained, quoting from United States v. _____________ Norflett, 922 F.2d 50, 53 (1st Cir. 1990), that under the ________ Guidelines it could not depart merely because it thought the sentence was excessive. Norflett explicitly says that age is ________ a disfavored reason for departure, and can be considered only in circumstances of "substantial atypicality." See id. at ___ ___ 54. The Norflett court held that the mere fact that the ________ defendant was thirty-four when sentenced and would be fifty- four when released, did not constitute unusual circumstances. We have no reason to believe that the district court in this case misapprehended its authority to depart on the (disfavored) ground of age. Affirmed.  ________  ____________________ 2. Since the sentencing in this case, we have recognized that a district court has the authority to depart downward where a career offender criminal history category of VI overrepresents a defendant's criminal history. United States _____________ v. Lindia, 82 F.3d 1154, 1164-65 (1st Cir. 1996). ______ -16- 16