UNITED STATES of America, Appellee,

v.

Jose R. CRUZ–KUILAN, Defendant, Appellant.

Nos. 94–2217, 95–1390.

United States Court of Appeals, First Circuit.

Heard Jan. 10, 1996.

Decided Feb. 5, 1996.

---

Miriam Ramos Grateroles, Bayamon, PR, for appellant.

Miguel A. Pereira, Assistant United States Attorney, with whom Guillermo Gil, United States Attorney, Hato Rey, PR, was on brief, for the United States.

Before SELYA, BOUDIN, and LYNCH, Circuit Judges.

LYNCH, Circuit Judge.

This is an appeal from a conviction for a carjacking which resulted in the owner of the car being shot to death in front of his wife and son in the carport of their home in Puerto Rico. Jose Cruz–Kuilan, age 20 at the time of the crime, was convicted of violating 18 U.S.C. § 2119(3), the carjacking statute, and 18 U.S.C. § 2, aiding and abetting in the same, and sentenced to life imprisonment. The primary argument on appeal—that it was error to allow expert testimony from a forensic pathologist and to admit photographs of the victim's wounds—is based on a theory this court recently rejected in *United States v. Rivera–Gomez*, 67 F.3d 993 (1st Cir.1995). Because the other arguments presented are without merit, we affirm.

The crime was cold-blooded and brutal. Cruz–Kuilan and two companions, Marrero Santiago and Rangel Pizzini, decided to steal a car, settled on a Buick Le Sabre they saw, and followed it in their own car. Theodore Edward Fuhs, a businessman, and his wife Luz Martinez Fuhs were driving to their home in Levittown, Puerto Rico, in the Le Sabre, unaware of being followed. Their son Carl was outside when his parents pulled into the "marquesina," the carport. Marrero and Cruz–Kuilan walked up to the car before Mr. and Mrs. Fuhs could get out. Pizzini remained in the assailants' car. In Spanish, Marrero ordered Mr. Fuhs out of the car. Mr. Fuhs, a continental American citizen, did not appear to understand. As Mr. Fuhs got out of the car, Marrero, angry at how slowly Fuhs was moving, pistol whipped him twice on the head. Mr. Fuhs lunged for Marrero and the two men toppled. Cruz–Kuilan moved to within two feet of Mr. Fuhs and fired point blank at his back. Mr. Fuhs was mortally wounded. One of the bullets passed through him to injure Marrero, underneath. Cruz–Kuilan and Marrero got into the Le Sabre and fled. Realizing Marrero was in need of medical care and would be questioned, they torched the Le Sabre and prepared a story. When Marrero sought medical care, he was indeed questioned. His story began to unravel and the arrests followed in the next several months.

At trial, both Marrero and Pizzini turned government witnesses in exchange for leniency. They identified Cruz–Kuilan. While Mrs. Fuhs and her son provided important corroborating testimony, neither could identify Cruz–Kuilan as one of the assailants. It

took the jury two and one-half hours to convict.

On appeal Cruz–Kuilan makes these arguments: (i) that the district court erred in admitting evidence relating to Mr. Fuhs' death; (ii) that the evidence was insufficient for a guilty verdict; (iii) that the prosecutor in his closing argument improperly vouched for the credibility of the government's witnesses; and (iv) that the district court erred in denying a new trial motion based on after-acquired evidence of a government witness' prior bad acts.

### I. Admissibility of Evidence of Death

■ Cruz–Kuilan's main argument is that he was charged with carjacking,[1] not with murder, and so it was error for the trial court to admit evidence of Mr. Fuhs' death. In particular, he complains about the testimony of a forensic pathologist who traced the path of the bullets through Mr. Fuhs' body and of the admission of photographs of Mr. Fuhs' wounds. Such evidence, he says, was not relevant and was unduly prejudicial. The statute itself, though, requires not just theft of a car while possessing a firearm, but the taking of a car from another "by force and violence or by intimidation, or [an] attempt[ ] to do so." 18 U.S.C. § 2119.

The global challenge to the admissibility of evidence of death in a carjacking case was soundly rejected in *United States v. Rivera–Gomez*, 67 F.3d 993, 996–98 (1st Cir.1995) ("It is difficult to conceive of a situation in which the death of a victim will not be relevant to the use of force and violence during the commission of an attempted carjacking.") (citing *United States v. Rodriguez*, 871 F.Supp. 545, 549 (D.P.R.1994) (admitting evidence of victim's death and means by which it was accomplished as relevant and "highly persuasive" of "force and violence" in a carjacking prosecution)). The death in this case was a central part of the carjacking and its "force and violence" component. As such it was relevant.

■ Cruz–Kuilan argues that even if relevant, the evidence was "unfairly prejudicial" under Rule 403. *See* Fed.R.Evid. 403. But here, as in *Rivera–Gomez*, the "evidence at issue [was] so tightly linked to guilt as defined by the elements of the offense, [that] it would be surpassingly difficult to justify a finding of unfair prejudice stemming from its introduction." 67 F.3d at 997. The photographs and testimony by a forensics expert went to more than the determination of the "force and violence" element. They also went to corroborating the government's theory of the case. The evidence showed lacerations on Mr. Fuhs' head and the entry and exit points of the bullets that passed through his body. The lacerations on Mr. Fuhs' head corroborated Marrero's story that he had struck Mr. Fuhs twice on the head. Similarly, the paths of the bullets corroborated the government's theory that one of the bullets shot by Cruz–Kuilan passed through Mr. Fuhs and proceeded to hit Marrero while he was under Mr. Fuhs.

Our standard of review on questions of evidentiary relevance balanced against prejudicial effect is for abuse of discretion. *Id.* at 997. "A decision by the district court on a Rule 403 determination must stand absent a demonstration of 'extraordinarily compelling circumstances.'" *United States v. Lombard,* 72 F.3d 170, 190 (1st Cir.1995) (quoting *United States v. Lewis,* 40 F.3d 1325, 1339 (1st Cir.1994)). Defendant has shown no such circumstances, and there was no abuse.

### II. Sufficiency of Evidence

■ Cruz–Kuilan argues that there was insufficient evidence for the jury to have found him guilty, and so the district court erred in not granting his motion for acquittal under Fed.R.Crim.Proc. 29. In reviewing a

---

1. The carjacking statute provides:
    Whoever, possessing a firearm ... takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—
    (1) be fined under this title or imprisoned not more than 15 years, or both,

    (2) if serious bodily injury ... results, be fined under this title or imprisoned not more than 25 years, or both, and
    (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both.
    18 U.S.C. § 2119 (Supp. V 1993).

sufficiency of the evidence claim we look at the evidence in the light most favorable to the verdict. *See United States v. Cotto-Aponte*, 30 F.3d 4, 5 (1st Cir.1994).

The argument fails. That the jury chose to believe the testimony of Cruz–Kuilan's fellow carjackers—despite his pungent cross-examination of their characters and motives—and to disbelieve the alibi offered by Cruz–Kuilan's estranged wife and mother, was well within its province. Credibility determinations are uniquely within the jury's province, and we defer to the jury's verdict if the evidence can support varying inferences. *See United States v. Rivera–Sola*, 713 F.2d 866, 869 (1st Cir.1983); *United States v. Winter*, 663 F.2d 1120, 1127 (1st Cir.1981), *cert. denied*, 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 479 (1983).

### III. Closing Argument

■ Cruz–Kuilan makes a misplaced attack on the prosecution's closing argument. Pulling together numerous statements made by the prosecution in its closing, Cruz–Kuilan asserts that the prosecution improperly vouched for the credibility of its witnesses. Since no objection was made at the time, our review is for plain error. *See United States v. Diaz–Martinez*, 71 F.3d 946, 950 (1st Cir. 1995).

■ In essence, defendant objects to statements in closing by the prosecution that the jury should come to believe on the evidence that the events occurred the way the government's witnesses said they did. That is not vouching.

■ Improper vouching occurs where the prosecution places the "prestige of the government behind a witness by making personal assurances about the witness' credibility." *United States v. Neal*, 36 F.3d 1190, 1207 (1st Cir.1994). Arguing that a witness is speaking the truth because he has reason to do so is not "making personal assurances." *See United States v. Dockray*, 943 F.2d 152,

156 (1st Cir.1991) (informing the jury of the effect of a plea agreement on a witness' incentives to testify truthfully is not improper vouching).

As well, the prosecution's argument was an appropriate response to Cruz–Kuilan's own arguments that Marrero and Pizzini were less worthy of belief as a result of their plea bargains. *See United States v. Mejia–Lozano*, 829 F.2d 268, 274 (1st Cir.1987) (prosecution has greater leeway in responding to attack on, and attempting to rehabilitate, its witnesses).

### IV. New Trial Motion

■ Cruz–Kuilan's final effort is to claim error in the denial of his request for a new trial. That request was based in turn on a claim that the prosecution had failed to provide the defense with information about certain "prior bad acts" committed by Pizzini. Cruz–Kuilan asserts that shortly before trial in this case, the Commonwealth's courts found probable cause for charges of murder, weapons possession, and possession of a stolen vehicle against Pizzini.[2] We review the district court's determination for an abuse of discretion. *See United States v. Pettiford*, 962 F.2d 74, 77 (1st Cir.1992).

Pizzini was hardly of sterling character and admitted to a prior robbery conviction and three prior robbery charges. Indeed, the prosecution itself had described Pizzini as a frequent participant in carjackings and a convicted robber. Pizzini's testimony was that he, Marrero, and Cruz–Kuilan planned to steal a car, that he drove everyone to Levittown where they spotted a car and followed it and that he dropped Marrero and Cruz–Kuilan at the carport and left. He did not see Mr. Fuhs being held at gun point or being shot.

We assume arguendo, as did the district court, that the prosecution knew or should have known of the additional asserted "prior bad acts" evidence, without in any way im-

---

2. Defense counsel has represented to us that Pizzini later pleaded guilty in the Commonwealth's courts to second degree murder, to violating the weapons laws and to having a stolen vehicle. But that plea was not entered until close to a year after the federal trial here. Furthermore, this was not a case where defendant claimed that Pizzini, not he, fired the weapon. Such a claim would be of no moment given the aiding and abetting charge and that the substantive charge was not murder, but carjacking. In any event, Cruz–Kuilan's defense was that he was not there at all.

pugning the government here. The question for the district court as to the new evidence is whether "it is 'material,' [and] it is 'material' only if there is 'a reasonable probability' that the evidence would have changed the result, and a 'reasonable probability' is 'a probability sufficient to undermine confidence in the outcome.'" *United States v. Sepulveda*, 15 F.3d 1216, 1220 (1st Cir.1993) (quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985)), *cert. denied*, ― U.S. ―, 114 S.Ct. 2714, 129 L.Ed.2d 840 (1994). Given Pizzini's admittedly extensive criminal past, it was not an abuse of discretion for the district court to find that the lack of additional cross-examination on the same well developed theme did not undermine confidence in the jury verdict of guilt. *Cf. Sepulveda*, 15 F.3d at 1219 (no abuse of discretion in denial of new trial request where the newly disclosed information at issue would have at most impeached further a witness of already "dubious" credibility). In light of all the other evidence, it is highly improbable that the "newly discovered" evidence would have mattered a whit. There was no abuse of discretion by the district court.

*Affirmed.*