**UNITED STATES of America, Appellee,**

v.

**Jaime CALDERON, Defendant, Appellant.**

**No. 95-1707.**

United States Court of Appeals,
First Circuit.

Heard Feb. 7, 1996.

Decided Feb. 27, 1996.

Merin Chamberlain, Manchester, NH, for appellant.

Jean B. Weld, Assistant United States Attorney, with whom Paul M. Gagnon, United States Attorney, was on brief, for the United States.

Before STAHL, Circuit Judge, ALDRICH, Senior Circuit Judge, and LYNCH, Circuit Judge.

LYNCH, Circuit Judge.

Having been convicted by a jury of carjacking and kidnapping, Jaime Calderon was sentenced to 30 years of imprisonment, and five years of supervised release thereafter. He now challenges the verdict, saying that certain evidence should have been suppressed and he should have been given a hearing on the motion to suppress, that the superseding indictment was invalid, that there was insufficient evidence to convict,

and that the jury's conviction of him on two counts was impermissibly inconsistent with its acquittal of him on two other counts. There being more than ample evidence to convict and none of the asserted errors having been committed, we affirm. Indeed, this is a case in which the police search was backed by more than the usual, and the careful efforts by the police to have both belt and suspenders to support the search marks more, rather than less, concern for adherence to the procedural protections afforded defendants.

*The Crime*

On the evidence, the jury was entitled to find the following. On August 31, 1994, Calderon heard that two young men were selling stereo speakers out of a van in his neighborhood in Nashua, New Hampshire. Emboldened by access to newly stolen guns, Calderon decided to take the van and the speakers. Calderon, age 33, recruited three teenagers, including his nephew Jose Hernandez, to help him. When Hernandez originally balked, his uncle excoriated him and called him a "chicken." The other two recruits, Angel Rivera and Julio Sanchez, approached the two young stereo salesmen and asked if they would take them in the van to a nearby place where they could make a purchase outside of the presence of police officers who might be looking for them. Once inside the van, Rivera and Sanchez used a gun and chokeholds to force the two salesmen to the back of the van, where they were made to lie, face down. The carjackers struck one on the head with a gun, causing profuse bleeding, and told the two men that if they ever went to the police, they would be hunted down at their homes and killed.

Rivera and Sanchez picked up Calderon in the van, at his apartment, where he assumed the role of driver. Hernandez joined the group as the van left the neighborhood. Because the salesmen were face down, they could not identify Calderon, but were aware of his presence in the van. Calderon, who was in charge, gave instructions that "if the kids get smart or something, . . . smack them around a little just to calm them down." The van was driven to Massachusetts. In Lowell, Calderon, a heroin addict, bought heroin and unloaded some of the speakers. The two "kids" were held with their faces down for three hours and then dumped into a wooded ditch in Billerica after one of them was kicked in the head.

Calderon's defense at trial was that he simply accepted a ride to Lowell, where he knew he could buy heroin, and had no part in the carjacking or kidnapping. A search of the apartment of Calderon's girlfriend, however, turned up both the stolen speakers and Calderon.

In the interim, a disquieted Hernandez turned himself in to the Nashua police and voluntarily cooperated.

*The Search*

Based on information from a confidential informant that at least one pair of the stolen speakers was at the apartment of Carmen Delgado, Calderon's girlfriend, the police went to Delgado's apartment at 11 p.m. on September 6, 1994. At that time the police had an outstanding warrant for Calderon's arrest for a failure to appear on a motor vehicle violation and Calderon was a prime suspect in the kidnapping and carjacking. The officers had reason to believe that Calderon was living at the address.

The police knocked and, when Delgado answered the door, they asked for permission to search. An officer also read from a consent form. Delgado gave consent. The officers then asked her to sign the consent form, which she did. Two of the stolen speakers were in plain sight. In addition, there was a man in the living room. The man gave a name, not the name "Jaime Calderon," and four different dates of birth. An officer stepped outside to look at a photograph of Calderon, realized the man was Calderon, and went back in and arrested him. Not knowing who or what was in the rest of the apartment, the police searched the remainder. They found two other speakers, of the type stolen, in a bedroom closet. A few hours later, the officers obtained a warrant to make a detailed search of the apartment for weapons and speakers. Delgado gave the police inconsistent versions of her story to the effect that the speakers came to her apartment innocently.

*Motion to Suppress*

■ Calderon argues that the district court erred in denying his motion to suppress evidence without an evidentiary hearing and that on the merits the motion should have been granted. The decision to hold an evidentiary hearing is committed to the discretion of the district court and our review is for abuse of that discretion. *See United States v. Lewis,* 40 F.3d 1325, 1332 (1st Cir.1994).

■ Evidentiary hearings on motions to suppress are required only where a defendant makes a sufficient showing that the evidence seized was the product of a warrantless search that does not fall within any exception to the warrant requirement. *Id.* The burden is on the defendant to allege facts, "sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented." *Id.* (internal quotations omitted).

■ Calderon argues that the motion to suppress should have been granted because Delgado gave no valid consent to the search, and that it was error for the district court not to take evidence and grant the motion. Leaving aside the question of whether Delgado's consent was necessary under the circumstances,[1] we analyze the issue as Calderon has framed it. Calderon posits that because Delgado primarily speaks Spanish, she could not have understood what the English-speaking police were saying in their late night, disorienting appearance at her apartment. But this is a supposition to which Calderon gave no flesh when he had the opportunity on the motion to suppress. Calderon filed no affidavits in support of the motion, not even from Delgado, on whose state of mind he now so heavily relies.[2] In contrast, the prosecution, in opposing the motion, provided copies of the police reports which told a different story. Delgado gave the police varying versions of how the speakers came to be in the apartment. There was no indication that she did not comprehend the explanation of the consent form or voluntarily execute it—indeed, all indications were to the contrary. Calderon presented no evidence at all that Delgado's will was "'overborne'" or that she suffered a "'critically impaired capacity for self-determination.'" *United States v. Wilkinson,* 926 F.2d 22, 25 (1st Cir.) (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 225, 93 S.Ct. 2041, 2046–47, 36 L.Ed.2d 854 (1973)), *cert. denied,* 501 U.S. 1211, 111 S.Ct. 2813, 115 L.Ed.2d 985 (1991).

The district court explained its denial of Calderon's motion to suppress without an evidentiary hearing:

> Defendant vaguely claims that Ms. Delgado's consent was coerced or was otherwise ineffective, but he offers no affidavit or statement from Ms. Delgado to that effect, describes no circumstances supporting his assertion, and makes no offer of proof relative to any other facts that might support his assertion.

There is no basis to disturb the district court's decision.

*Constructive Amendment*

■ Calderon's second argument is that there was a "constructive amendment" to his indictment, in violation of his Fifth and Sixth Amendment rights. "The [F]ifth [A]mendment requires that a defendant be tried only on a charge made by the grand jury," and the Sixth Amendment "requires that the defendant be informed of the nature and cause of the accusation." *United States v. Kelly,* 722 F.2d 873, 876 (1st Cir.1983), *cert. denied,* 465 U.S. 1070, 104 S.Ct. 1425, 79 L.Ed.2d 749 (1984). When Calderon was first indicted on September 14, 1994, the kidnapping charge omitted the phrase "for ransom or reward or otherwise," a necessary element of the of-

---

1. For example, the police believed Calderon to be living with Delgado and had an arrest warrant for Calderon. "Generally, the police do not need a search warrant to enter a suspect's home when they have an arrest warrant for the suspect." *United States v. Lauter,* 57 F.3d 212, 214 (2d Cir.1995); *see also Payton v. New York,* 445 U.S. 573, 603, 100 S.Ct. 1371, 1388–89, 63 L.Ed.2d 639 (1980).

2. On appeal, Calderon asserts for the first time that the police officers had already crossed the threshold of the apartment when they asked Delgado for her consent, and that this was an additional factor showing coercion. The argument, not having been made before the district court, is waived. *See United States v. Carvell,* 74 F.3d 8, 13–14 (1st Cir.1996).

fense. *See* 18 U.S.C. § 1201. Subsequently, the missing phrase was added, and that superseding indictment was presented to a grand jury on October 26, 1994, which returned it. And that fact disposes of Calderon's claim. *Cf. United States v. Dunn,* 758 F.2d 30, 35 (1st Cir.1985) (constructive amendment occurs where "the charging terms of the indictment are altered, either literally or in effect, by prosecution or court *after the grand jury has last passed on them*" (emphasis added; internal quotations omitted)). A defendant cannot complain of an improper constructive amendment if the indictment is *actually* amended by resubmission to the grand jury.[3] *Cf. United States v. Angiulo,* 847 F.2d 956, 964 (1st Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 138, 102 L.Ed.2d 110 (1988).

### Sufficiency of Evidence

■ Calderon argues that there was insufficient evidence for the jury to have found him guilty, and so the district court erred in not granting his motion for acquittal under Fed.R.Crim.P. 29. "In reviewing a sufficiency of the evidence claim we look at the evidence in the light most favorable to the verdict." *United States v. Cruz–Kuilan,* 75 F.3d 59, 61–62 (1st Cir.1996).

■ The thrust of Calderon's challenge is that the jury should not have believed the version of the story, contrary to his, recounted by two of his accomplices and a confidential informant whose son was in prison. The argument fails. It was well within the jury's province for it to choose to believe the testimony of Calderon's accomplices—in the face of his cross-examination of their characters and motives—and to disbelieve Calderon's version of the story. *See id.* "Credibility determinations are uniquely within the jury's province, and we defer to the jury's verdict if the evidence can support varying inferences." *Id.* (citations omitted).

### Alleged Verdict Inconsistency

■ Calderon also argues that his carjacking conviction cannot stand because

he was acquitted of the firearms possession charges and firearm possession was an essential element of the carjacking offense. In criminal law "the Supreme Court has made it clear that verdict inconsistency in itself is not a sufficient basis for vacating a conviction." *United States v. Lopez,* 944 F.2d 33, 41 (1st Cir.1991) (citing *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), and *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932)).

This Court explained in *Lopez:*

> Verdict inconsistency does not indicate that the government necessarily failed to prove an essential element of its case beyond a reasonable doubt.... We cannot necessarily assume[ ] that the acquittal ... was proper—the one the jury really meant. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on [one] offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on [other] offense. As long as the trial and appellate courts are convinced on independent review that there was sufficient evidence to sustain a rational verdict of guilt beyond a reasonable doubt, the defendant is properly protected against any risk of injustice resulting from jury irrationality.

*Id.* (citations and internal quotations omitted). Because Calderon's conviction was supported by sufficient evidence, the challenge based on alleged verdict inconsistency fails.

*Affirmed.*

---

**3.** Since Calderon's argument that it was error for the district court to have denied his motion for the transcripts of the second grand jury sitting is premised on there having been an improper constructive amendment, we do not address it.