### UNITED STATES of America,

v.

### Jeffrey P. BARNARD, Defendant

### No. CR.01–41–B–W.

United States District Court,
D. Maine.

Feb. 11, 2004.

Marvin H. Glazier, Vafiades, Brountas & Kominsky, Bangor, ME, for Defendant.

Gail Fisk Malone, U.S. Attorney's Office, Bangor, ME, for Plaintiff.

### ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL

WOODCOCK, District Judge.

After a two day jury trial, Jeffrey Barnard, the Defendant, was convicted on November 13, 2003 of possession of a firearm by a prohibited person under 18 U.S.C. § 922(g). The Government charged that the Defendant possessed three firearms: one Pietta Model Bantam .22 LR bolt action rifle; one Remington Model 870 .12 gauge pump-action shotgun; and one SKS 7.62 × 39 caliber semi-automatic rifle. The parties stipulated that Mr. Barnard had previously been convicted of a felony.

The Defendant now moves for a new trial under Federal Rule of Criminal Procedure 33(a), claiming newly discovered evidence indicates a Government witness

was incorrect when he testified to the origin of the shotgun. For the reasons set forth below, the Defendant's Motion for a New Trial is DENIED.

### Facts and Procedural History

In the early morning hours of December 3, 2000, Mr. Barnard was awakened by the police. Pursuant to a search warrant, a Maine State Police Tactical Team arrived at his house, burst into his bedroom, and found three firearms—an SKS 7.62 × 39 caliber semi-automatic rifle and a Remington Model 870 .12 gauge pump-action shotgun in a gun cabinet in his bedroom and a loaded Pietta Model Bantam .22 LR bolt action rifle standing beside his bed.

Mr. Barnard's Motion for a New Trial focuses on the testimony of Walter Cote, III, the Government's first witness on November 12th. Mr. Cote identified the shotgun seized at Mr. Barnard's home as being the same shotgun Mr. Cote himself had sold to Mr. Barnard sometime in July 2000. Mr. Cote testified a man named Ralph Bragdon had given him the shotgun in lieu of wages and he had sold it to Mr. Barnard a day later. Marvin Glazier, Esq., counsel for Mr. Barnard, cross-examined Mr. Cote about his recollection of specific dates and facts surrounding Mr. Barnard's acquisition and possession of all of the firearms, specifically including the shotgun.

Mr. Glazier had listed Jason Hartley, Mr. Cote's first cousin, as a witness for the defense. According to Mr. Hartley, while he was waiting to testify, but after Mr. Cote had testified, he and Mr. Cote had a conversation about Mr. Cote's testimony. In an Affidavit submitted with the Motion for New Trial, Mr. Hartley claimed that Mr. Cote described the shotgun that he had testified he had sold to Mr. Barnard for $100.00 in July 2000. (Def.'s Mot. New Trial at Ex. 1 (Docket # 78)). Mr. Hartley's Affidavit states that Mr. Cote told him the shotgun he had sold to Mr. Barnard had a crack in the pump action and a muzzle break at the end of the barrel. The shotgun in the courtroom, however, had neither. When Mr. Cote described the shotgun he had testified he had sold to Mr. Barnard, Mr. Hartley recognized that he was in fact describing a shotgun Mr. Cote had sold to him in July 2000 for $100.00. Mr. Hartley still owns the shotgun and he submitted copies of photographs of the shotgun with his Affidavit. In support of his Motion, the Defendant also submitted an Affidavit from Ralph Bragdon, stating that in July 2000, he gave Mr. Cote the shotgun depicted in Mr. Hartley's photographs, in lieu of wages. He identified the shotgun from the crack in the pump action and the muzzle break.

The Defendant called Mr. Hartley to testify after the Government rested during the first day of trial. Mr. Hartley made no mention of this issue. Apparently, after the first day of trial, Mr. Hartley told Mr. Glazier about his conversation with Mr. Cote. Mr. Glazier or Mr. Hartley then photographed the shotgun and Mr. Glazier reported the alleged conversation to Gail Fisk Malone, the Assistant United States Attorney, and gave her the photographs. Ms. Malone apparently showed the photographs of the shotgun to Mr. Cote and reported back to Mr. Glazier that Mr. Cote said he did not recognize the shotgun in the photographs.

The Defendant called three witnesses who contradicted Mr. Cote's version of the sale of the shotgun. Wade Batchelder, Mr. Barnard's step-son, and Harold Edwards, Mr. Barnard's second step-son, testified that Mr. Cote was incorrect about the ownership of the shotgun. Mr. Batchelder testified the shotgun was his. He said that he had purchased the shotgun from a man named Corey Austin in July or

August 2000 and had left the gun in Barnard's gun closet in November 2000 after going hunting with Jason Hartley and Harold Edwards. Mr. Batchelder's testimony was corroborated by Harold Edwards, who confirmed that the shotgun was Wade Batchelder's and that they had placed all three guns in the gun closet after hunting in November. Finally, Mr. Barnard himself testified and flatly denied purchasing the shotgun from Mr. Cote.

Mr. Glazier made two vague references to the Court about the Cote–Hartley conversation. First, at a conference in chambers before trial on November 13th, Mr. Glazier suggested that an issue might be brought to the Court's attention at a later point in time:

THE COURT: First, is there anything I need to attend to at this time?

MR. GLAZIER: Maybe. An issue came up after the close of evidence yesterday that I discussed with Gail yesterday, but I need a little more information before I can bring it to the court. It involves a discussion between the—Mr. Cote and Mr. Hartley. They were witnesses yesterday—

THE COURT: Right.

MR. GLAZIER:—and the court may also remember they were cousins.

THE COURT: Right.

MR. GLAZIER: And evidently they were chatting sometime yesterday—I don't know how else to put it—and there was a discussion about a piece of evidence that Mr. Hartley called me about last night—not last night—yesterday afternoon when they came back from court, and I told them to come in early this morning so I could talk with him, and I immediately called Gail to tell her what transpired, but it's too vague right now to bring to the court's attention. We may have to deal with it before the close of—final close of evidence.

THE COURT: All right.

(Transcript of Nov. 13, 2003 conference).

Second, at side bar prior to the close of Mr. Barnard's case on November 13th, Mr. Glazier informed the Court that he was not going to pursue the issue of the alleged conversation:

MR. GLAZIER: Judge, I had mentioned to you in chambers this morning about the situation that happened yesterday afternoon.

THE COURT: Correct.

MR. GLAZIER: And I have pictures of that weapon that Mr. Cote says, in fact, he sold to my client, which is not the weapon that he testified to yesterday, and I have asked—I've given the pictures to—to Gail, and I don't know if she's had a chance to show those to Mr. Cote.

MS. MALONE: I haven't.

MR. GLAZIER: So I'm wondering, before I end with my case, since it's kind of surprise, I wondered if we mind taking a short break now, and we perhaps can figure out the way we can handle this most expeditiously.

MS. MALONE: That's fine.

THE COURT: That's fine with me. Why don't I just tell [the jury] we'll take our mid-morning recess at this point—

MR. GLAZIER: Okay.

THE COURT:—for about 15 or 20 minutes. Will that be enough time or do you need more?

MS. MALONE: That should be fine.

MR. GLAZIER: I think so, Judge, yes.

THE COURT: So let's tell [the jury] we'll take our recess for 20 minutes at this point.

MR. GLAZIER: Okay.

THE COURT: And then we'll find out whether or not there'll be any further evidence.

MR. GLAZIER: That's fine, Judge. Very good.

THE COURT: Very good. Thank you.

[Brief recess]

THE COURT: Are we ready to bring the jury back in?

MR. GLAZIER: May I address the court, please?

THE COURT: Yes, sir.

MR. GLAZIER: Just two things, and then I think we'll be ready. Judge, this morning I mentioned to you about what happened after court yesterday. I told you that I was going to have pictures taken, and Ms. Fisk Malone has kindly showed them to Mr. Cote, but I guess it's a different story from what he's telling her than what he told—allegedly told Jason Hartley. So there's nothing I can do with that today. I mean, it'd be just way too confusing to try to muck through it. There are other ways of doing it at other times, perhaps. So I'm not going to get into that issue.

(Transcript of Nov. 13, 2003, trial).

Mr. Glazier did not mention the issue again. Instead, he proceeded to his closing argument, where he reminded the jury of Mr. Cote's inability to recall specific dates and said that he was such an unreliable witness that even the Government had abandoned him as credible. After trial, Mr. Glazier tracked down Mr. Bragdon, who confirmed that he believed the Hartley shotgun was not the gun he had given to Mr. Cote and signed an Affidavit to this effect.

Mr. Barnard now moves for a new trial, arguing that Mr. Hartley and Mr. Bragdon should be allowed to testify that Mr. Cote was incorrect regarding the origin of the shotgun seized from Mr. Barnard's home. Mr. Barnard contends a new trial is appropriate because: (1) Mr. Glazier could neither have known about nor confirmed the information before trial; (2) the information is material to the crime charged because it refers to one of the guns listed by the Government as possessed by Mr. Barnard and Mr. Cote's testimony could have "set the tone for the jury in regards to its decision"; (4) the information is authentic, not merely cumulative or impeaching; and, (5) the information would probably produce a different result upon retrial. (*See* Def.'s Mot. New Trial at 2–4 (Docket # 78)).

### Discussion

Federal Rule of Criminal Procedure 33(a) provides, in part, "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." The remedy of a new trial is not favored and should be granted only where a miscarriage of justice would otherwise result. *United States v. Johnson*, 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562 (1946); *United States v. Rothrock*, 806 F.2d 318, 322 (1st Cir.1986) ("a trial judge is not a thirteenth juror who may set aside a verdict merely because he would have reached different result").

A defendant seeking a new trial on this basis must prove the following: "(1) the evidence must have been unknown or unavailable to the defendant at the time of trial; (2) the defendant must have been duly diligent in attempting to unearth it; (3) the newly discovered evidence must be material; and, (4) the newly discovered evidence must be such that its emergence probably will result in an acquittal upon retrial." *United States v. Conley*, 249 F.3d 38, 45 (1st Cir.2001); *United States v. Wright*, 625 F.2d 1017, 1019 (1st Cir.1980). If the defendant fails to carry his burden

with respect to any one of these factors, the motion for a new trial must be denied. *United States v. Falu–Gonzalez*, 205 F.3d 436, 442 (1st Cir.2000). Here, the proffered evidence falls short of the standard for a new trial under Rule 33(a).

### A. The Evidence is not Newly Discovered

The evidence was neither unknown nor unavailable to the defendant at the time of trial. To the contrary, the crux of the Hartley testimony was known to defense counsel during the trial itself. The Motion together with the transcript of the trial establish that by the beginning of the second day of trial, Mr. Glazier knew of the conversation between Mr. Cote and Mr. Hartley, including the following: (1) that Hartley was contending Mr. Cote had admitted he had given inaccurate trial testimony about the shotgun; (2) that Mr. Hartley was willing and able to testify that he owned the shotgun Cote had described as being the one he had sold to Mr. Barnard; (3) that Hartley had photographs of the shotgun and presumably had access to the shotgun itself; and (4) that he could testify that the shotgun in the courtroom was not the shotgun Mr. Cote had obtained from Mr. Bragdon. The only corroborating piece of evidence Mr. Glazier did not have during the trial itself was Mr. Bragdon's separate confirmation that Mr. Hartley, not Mr. Cote, was correct.

### B. The Court Cannot Draw an Inference of Due Diligence

There has been no showing Mr. Bragdon's testimony could not have been discovered during the trial with due diligence. The Motion is silent as to what efforts, if any, Mr. Glazier made during the course of trial to contact Mr. Bragdon. The Motion simply asserts that "there was no way Counsel for Defendant could have learned all the particulars of this issue until he had a chance to speak to Mr. Bragdon independently of Mr. Hartley's statements." (*See* Def.'s Mot. New Trial at 3 (Docket # 78)) By the end of the first day of trial, Mr. Glazier knew that Mr. Hartley was saying that he had purchased the shotgun from Mr. Bragdon.

Yet, there is nothing in the record to establish that Mr. Glazier even attempted to contact Mr. Bragdon at any time during the course of trial. The Court is left to speculate whether Mr. Glazier's other trial preparation responsibilities prevented him from pursuing the issue in a timely manner or whether Mr. Bragdon was unreachable on short notice. Moreover, Mr. Glazier did not request court intervention. Mr. Glazier had a number of options, none of which he pursued. He could have requested a delay in the start of trial on November 13, 2003, alerting the Court to the problem he was having tracking down Mr. Bragdon. He could have asked for a brief continuance after he met with Mr. Hartley on the morning of November 13th. He could have recalled Mr. Cote to cross-examine him on the statements he allegedly made to Mr. Hartley. He could have recalled Mr. Hartley and asked him about the Cote statements and about his identification of the shotgun.

Instead, Mr. Glazier elected to make an oblique reference to the situation during the conference, saying it was "too vague . . . to bring to the Court's attention," and then waived the issue before closing arguments as part of his trial strategy:

> [T]here's nothing I can do with that today. I mean, it'd be just way too confusing to try to muck through it. There are other ways of doing it at other times, perhaps. So I'm not going to get into that issue.

(Transcript of Nov. 13, 2003, trial).

■ Defense counsel knew the kernel of the evidence and could have discovered the

entire substance if he explored the issue at that time. Such information is not "newly discovered" for the purposes of Rule 33(a). *E.g., Nardone v. United States,* 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939) (stating defendant must satisfy district court that evidence could not have been discovered before or at trial); *United States v. Mello,* 469 F.2d 356 (1st Cir.1972) (testimony readily available at time of trial is not "newly discovered"). This is particularly true when defense counsel decides not to pursue the evidence as part of his trial strategy.[1] *E.g., id.; United States v. Kampas,* 189 F.Supp. 720 (D.C.Pa.1960) (finding no sufficient basis for new trial when defendant deliberately chose to forego cross-examination of witness regarding certain issue as part of trial strategy).

█ Decisions of defense counsel, such as whether to pursue evidence or waive arguments, are binding on their defendants. *E.g., Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Blanco v. Singletary,* 943 F.2d 1477 (11th Cir.1991); *Coco v. United States,* 569 F.2d 367 (5th Cir.1978); *see also Watkins,* 90 F.3d at 143 (holding defense counsel's strategic decision to consent to mistrial binds defendant and removes bar to reprosecution regardless of whether defendant participates in decision). Therefore, defense counsel's decision not to pursue the information as part of his trial strategy, even though it was available to him through due diligence, precludes the Defendant from offering the information as newly discovered evidence at this time. *Id.*

## C. The Evidence Is Not Material

The evidence is not material because (1) it is merely impeaching and cumulative; and (2) it is not reasonably probable to have changed the result. Mr. Cote's testimony on the purchase and sale of the shotgun was contradicted by three witnesses: Jeffrey Barnard, Wade Batchelder, and Harold Edwards. The reason for calling Mr. Bragdon, if he had been available, would have been to confirm that Mr. Cote's testimony was untrue. Assuming the jury had believed Mr. Bragdon, he would not have offered any direct testimony on the ownership of the shotgun found in the Defendant's bedroom other than corroborating that it was not the gun he had given to Mr. Cote. Mr. Bragdon's testimony would, therefore, be impeaching and cumulative and would not constitute grounds for a new trial. *See United States v. Cruz–Kuilan,* 75 F.3d 59, 63 (1st Cir. 1996) (no abuse of discretion where lack of additional cross-examination on "well-developed" theme of witness' criminal past did not undermine confidence in jury verdict of guilty); *United States v. Sepulveda,* 15 F.3d 1216, 1219 (1st Cir.1993) (no abuse of discretion where newly disclosed information would have at most impeached further a witness of already dubious credibility); *see also U.S. v. Saada,* 212 F.3d 210, 216–17 (3d Cir.2000) ("Given the abundance of impeachment evidence presented at trial detailing [the witness'] propensity for deceitful acts and his incentive for testifying as a government witness, we conclude that the District Court did not abuse its discretion in ruling that the new evidence was merely cumulative").

1. Defense counsel's decision not to pursue the issue because he feared it would be too confusing was clearly a matter of trial strategy. *See Watkins v. Kassulke,* 90 F.3d 138, 143 (6th Cir.1996) (holding that when decision to waive right depends on time-sensitive assessment of defendant's litigation position, decision is matter of trial strategy); *see generally Phoenix v. Matesanz,* 233 F.3d 77, 84 (1st Cir.2000) ("Defense counsel is allowed to make strategic decisions, within the wide bounds of professional competence, as to which leads to follow up, and on which areas to focus his energies").

■ Additionally, the evidence is not "material" for the purposes of Rule 33(a). New evidence is "material" "only if there is a reasonable probability that the evidence would have changed the result, and a reasonable probability is a probability sufficient to undermine the confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Here, the Defendant does not contest that Mr. Hartley's shotgun was seized from the Defendant's bedroom. Whether Mr. Cote sold the shotgun to the Defendant bears only a minimal relation to the crime charged; namely, whether the Defendant possessed the guns seized from his home. The information would merely reinforce the "well-developed theme" of Mr. Cote's incredibility.[2] *See Cruz–Kuilan,* 75 F.3d at 63; *Sepulveda,* 15 F.3d at 1219; *see also Saada,* 212 F.3d at 216–17.

### D. It is Not Probable That the Evidence Will Result in an Acquittal

Further, it is highly improbable that the newly discovered evidence would lead to a different result upon retrial. The Government charged the Defendant with possession of the shotgun, not purchase of the shotgun. The evidence established that the shotgun was located in a gun closet in the Defendant's bedroom. Regardless of whether the jury credited Mr. Cote's testimony, the main issue was whether the Defendant possessed the firearms seized from his bedroom. A jury could have accepted that the shotgun was owned by Wade Batchelder, not the Defendant, and still have convicted the Defendant of possessing the shotgun. Indeed, Mr. Hartley's new testimony would not be sufficient to support a reasonable jury's finding that the Defendant did not possess those firearms because Mr. Hartley would be testifying about a fourth firearm, a weapon not at issue in this case.

It is true that Mr. Cote's testimony, if believed, could have led the jury to conclude that the Defendant knowingly possessed the shotgun, since he had bought it. But the fact remains the police found the shotgun located in a gun closet in the Defendant's bedroom. Based on this evidence, the jury was virtually compelled to find that he possessed the shotgun, regardless of whether he purchased it from Mr. Cote. The Defendant never satisfactorily explained why he did not possess guns located in a gun closet in his bedroom. He testified that the gun closet had been moved from the living room into his bedroom to prevent his twenty-year old stepson from gaining access to the guns. However, his stepson testified that he had his own .22, which he kept locked in his closet away from the Defendant because he knew his stepfather could not possess firearms. Moreover, the Defendant's explanation is difficult to reconcile with the

---

2. Indeed, the Government concedes defense counsel "rigorously" cross-examined Mr. Cote and "every defense witness directly contradicted" his testimony. (*See* Gov't Mem. Opp. Def.'s Mot. New Trial at 6 (Docket #81)). In light of his cross-examination of Mr. Cote, Mr. Glazier's decision not to pursue the issue was eminently reasonable. He had, as the Government concedes, made inroads on Mr. Cote's credibility. He had also presented the testimony of two witnesses who had flatly contradicted Mr. Cote's testimony as to the ownership of the gun. To call Mr. Hartley and offer testimony that Mr. Cote had told him he was mistaken about the identity of the shotgun would undoubtedly have been, as Mr. Glazier concluded at trial, "too confusing to try to muck through." Mr. Glazier knew that Mr. Cote was going to deny that the Hartley shotgun was the one he had sold to Mr. Barnard and the jury would have been presented with yet another contradiction among individuals all of whom were associated with his client. Mr. Glazier's decision not to pursue the issue seemed wise at the time and despite the verdict, still seems so.

police testimony that when they entered the room, they found a loaded .22 standing beside his bed.

Finally, even if the testimony led a jury to conclude that the Defendant did not possess the shotgun, it cannot be said that the new evidence would lead to a different result because the jury was not required to find that the Defendant possessed each weapon charged by the Government. As the jury instructions made clear, simultaneous possession of multiple firearms in one place at one time is a single violation of § 922(g)(1). *United States v. Verrecchia*, 196 F.3d 294, 298 (1st Cir.1999). Therefore, even if a jury determined that the Defendant did not possess one of the three firearms charged, this Court cannot say that it would likely acquit him of possessing the other weapons.

### Conclusion

Because the Defendant has not proven the elements necessary for a new trial under Rule 33(a), the Motion for a New Trial is DENIED.

SO ORDERED.